IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEONARDO BROWNING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-03488-N |
| | § | |
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Southwest Airlines Co.'s ("Southwest") motion for summary judgment [26]. Plaintiff Leonardo Browning's Family Medical Leave Act ("FMLA") claims are time-barred, and he fails to make out a prima facie case of either race or disability discrimination under the Texas Labor Code ("TLC"). Accordingly, the Court grants Southwest's motion.

## I. ORIGINS OF THE DISPUTE

Leonardo Browning has worked for Southwest since 2006. After spending five years as a Customer Service Representative, he became a Flight Attendant in 2011. At some point before that, however, Browning began using FMLA leave to tend to a growing list of disabilities that included depression, insomnia, and sensitivity to medication. His medical problems soon got worse. In 2014, Browning says that he had developed a form of cancer that was making it increasingly difficult for him to work as a flight attendant.

In the beginning of April 2015, Browning was feeling particularly ill. He called his supervisor to report that he was taking FMLA leave that would cover a shift he was scheduled for on April 3, 2015. He was next scheduled as a reserve for a shift based in Dallas beginning on April 10, 2015. Southwest's Work Rule—Class I, #17 ("Rule 17") requires reserves to be within two hours driving distance of the airport he or she is assigned to for the duration of the shift.

On April 10, 2015, Browning was not within two hours driving distance of Dallas. Instead, believing he was still on FMLA leave, he was at his home in Austin. He did not respond to Southwest's attempts to reach him prior to the start of his shift. When it finally learned that Browning was in Austin on April 10th, Southwest terminated Browning for violating Rule 17.

On or about May 16, 2017, Browning filed a petition in state court, alleging violations of the FMLA, as well as race and disability discrimination under the TLC. Southwest removed the case to this Court and now moves for summary judgment.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of

the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS SUMMARY JUDGMENT FOR SOUTHWEST AS TO BROWNING'S FMLA CLAIMS

#### A. Browning's FMLA Claims are Time-Barred

FMLA claims generally carry a two-year limitations period, but that period may be extended to three-years if there is evidence of a willful violation. *Mozingo v. Oil States Energy, Inc.*, 661 F. App'x 828, 830 (5th Cir. 2016) (citing 29 U.S.C. § 2617(c)). It is undisputed that Browning filed his original petition on either May 16 or 17, 2017.[1] The Court holds that Browning became aware of his claims on May 9, 2015, that the limitations period was not extended, and that Browning's FMLA claims are thus time-barred.

---

[1] Browning claims that he filed his Original Petition on May 16, 2017. Pl.'s Br. in Supp. of His Resp. to Def.'s Mot. for Summ. J., 13 [33] ("Resp."). Southwest states that he filed his claims on May 17, 2017. Def. Southwest Airlines Co.'s Reply Br. in Supp. of its Mot. for Summ. J., 3 [36] ("Reply"). For reasons detailed next, whether Browning filed on the 16th or 17th is ultimately irrelevant.

Much of this dispute hinges on the application of the sham affidavit doctrine. The doctrine allows a district court to "refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'" *Winzer v. Kaufman Cty.*, 916 F.3d 464, 472 (5th Cir. 2019) (citing *Clark v. Resistoflex Co., a Div. of Unidynamics Corp.*, 854 F.2d 762, 766 (5th Cir. 1998)). This doctrine is to be applied with care. "Not every discrepancy in an affidavit justifies a district court's refusal to give credence to competent summary judgment evidence." *Id.* If the "affidavit supplements, rather than contradicts an earlier statement" or if the two statements can be reconciled, then the sham affidavit doctrine does not apply. *Id.*

Browning has made three statements regarding the accrual date of his FMLA claims. First, in his Original Petition, Browning claims that he was not aware of his termination until May 16, 2015. Pl.'s Original Pet., 3 [1-1]. But during his deposition he made clear he was mistaken:

> Q. I'll represent to you that May 8th, 2015 was a Friday?
>
> A. Okay. So I found out Saturday.
>
> Q. Okay. The 9th?
>
> A. Uh-huh.
>
> Q. Okay. So you found out on May 9, 2015 that you were being terminated?
>
> A. Right. And I thought it was the 16th.

App. in Supp. of Def. Southwest Airlines Co.'s Mot. for Summ. J., Ex. 6, 416 [28] ("Deposition"). Now, in a declaration submitted with his Response, Browning again claims

that he was not aware of his termination until the 16th. App. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. B, ¶10 [34] ("Declaration").

These statements cannot be reconciled. It is not as if Browning has argued that he was confused during the deposition and is offering the declaration as a final clarification of his recollection. Browning offers no explanation whatsoever for the contradictory statements. Instead, the Court is left with a sworn statement in which Browning acknowledges that he was previously mistaken and actually became aware of his termination on May 9, 2015, and a declaration submitted four months later stating the exact opposite with no explanation as to why. Thus, the Court holds that the sham affidavit doctrine applies to this aspect of Browning's declaration.

Based on Browning's deposition testimony, it is undisputed that he found out about his termination on May 9, 2015, but did not file his FMLA claims until May 16 or 17, 2017. Thus, Browning's FMLA claims are time-barred unless he can present evidence of a willful violation.

In order to establish a willful violation, Browning "must show that his employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Mozingo*, 661 F. App'x at 830. Browning alleges that Southwest acted willfully by terminating him despite knowing that his FMLA leave covered the April 10th shift. This allegation hinges on the evidence surrounding Southwest's knowledge regarding Browning's leave.

Again, the sham affidavit doctrine comes into play. In his deposition, Browning suggested that he believed he had to call Southwest to extend the leave he requested on April 3rd to cover his April 10th shift:

> Q. You claim that the April 3rd phone call is where you asked for FMLA leave for the 10th?
>
> A. No, but they – that's also where the paperwork was filled out for consecutive day basis to cover. If I called in, like, any time before, it would also apply to the next week . . . .

Deposition, 411-12. Yet in his declaration he states that he told his supervisor that his "leave would continue into my next shift" and that he "had informed [his] supervisor that [he] would be taking FMLA leave" for the April 10th shift. Declaration, ¶¶ 3, 5.

These statements too are irreconcilable. In his deposition, Browning stated that in order for the FMLA leave he requested on the 3rd to apply to his next shift, he would have needed to call in. In his declaration he states the opposite: that he told Southwest his leave would apply for both shifts. Browning offers no clarifying explanation and never attempted to correct or modify the deposition testimony. With no conceivable way of reconciling the two statements, the Court holds that the sham affidavit doctrine applies to this aspect of Browning's declaration as well.

Relying on Browning's deposition testimony, it is undisputed that Southwest had no reason to think Browning had extended the leave he requested on the 3rd to cover the shift on the 10th and was therefore excused from Rule 17. Browning has not presented any evidence suggesting that Southwest knowingly violated the FMLA. Accordingly, the Court

holds that the limitations period was not extended, and that Browning's FMLA claims remain time-barred.

### IV. THE COURT GRANTS SUMMARY JUDGMENT FOR SOUTHWEST AS TO BROWNING'S TLC CLAIMS

#### *A. Legal Standard under the TLC*

The Court should utilize the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) burden shifting framework to evaluate both Browning's race and disability discrimination claim. *Donaldson v. Tex. Dept. Of Aging and Disability Servs.*, 495 S.W.3d 421, 434 (Tex. App.— Houston [1st Dist.] 2016, pet. denied). Browning must first make out a prima facie case of discrimination. For his disability discrimination claim he must show that he: (1) has a disability, (2) was qualified for the position, and (3) suffered an adverse employment decision because of his disability. *Id.* at 436-37 (citing Tex. Lab. Code § 21.105). To make out a prima facie case of race discrimination, Browning must show that he: (1) is part of a protected class, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) was replaced by someone outside of his protected class or that other similarly situated individuals were treated more favorably. *Id.* at 434.

If he makes out a prima facie case, the burden shifts to Southwest to articulate a legitimate, non-discriminatory reason for Browning's termination. *McDonnell Douglas Corp.*, 411 U.S. at 802. It is undisputed that it has. Southwest states that it fired Browning for violating Rule 17. While Browning disagrees with Southwest's decision, he does not dispute that this was the reason for his termination. Deposition, 407. Finally, under the

*McDonnell Douglas Corp.* framework, the burden then shifts back to Browning to show that Southwest's reason was mere pretext for discrimination. *Id.* at 804.

### *B. Browning Cannot Make Out a Prima Facie Case of Either Race or Disability Discrimination*

Browning cannot make out a prima facie case showing either type of discrimination because he has admitted that he was not qualified to be a flight attendant at the time of his termination. Here too the sham affidavit doctrine comes into play. In December 2017, the Social Security Administration reviewed Browning's case. It found that, given Browning's residual function capacity, there were no jobs existing in significant numbers in the national economy that Browning could perform. App. in Supp. of Def. Southwest Airlines Co.'s Mot. for Summ. J., Ex. 10, 572 [28]. At his deposition, Browning explicitly stated that he agreed with this assessment and that it would not be possible for Southwest to accommodate him given his illness:

> Q. Okay. And on Page 9 of 10, if you look at paragraph 10, it says, (reading) Considering your age, education, work experience — sorry, I'm trying to talk slowly — and residual function capacity, there are no jobs that exist in significant numbers in the national economy that the Claimant can perform.
>
> A. Yes.
>
> Q. Do you agree with that statement?
>
> A. Yes, ma'am.
>
> Q. Do you think that it would be possible for Southwest to accommodate a flight attendant who could not stand or walk for two hours?
>
> A. I won't let my emotions get to me. I was good at it and I loved it but, no, I don't think so.

Deposition, 404. Yet, in his declaration Browning states that he was "with or without reasonable accommodation, able to perform the essential functions of [his] employment position at [Southwest]." Declaration, ¶15.

These statements cannot be reconciled. In his deposition, Browning agreed that he was not able to be employed *anywhere* and that Southwest could not reasonably accommodate him. Four months later, without any clarification or explanation, he says the exact opposite. Accordingly, the Court applies the sham affidavit doctrine and disregards the statement Browning makes in his declaration. Thus, it is undisputed that Browning was not qualified to be a flight attendant in May 2015. Browning therefore cannot make out a prima facie case of either race or disability discrimination.

### C. Alternatively, Browning Cannot Present Evidence of Pretext

Even if Browning could make out a prima facie case, his TLC claims would still fail because he cannot present evidence of pretext. Browning attempts to show pretext by pointing to three allegedly similarly situated individuals who received favorable treatment, and by arguing that Southwest knew he was exempted from Rule 17 because he was on leave. Resp. 16. The Court has already addressed Browning's second argument, and disagrees with his first.

For individuals to be similarly situated, the "plaintiff must be able to establish that 'the employment actions at issue were taken under nearly identical circumstances.'" *Moore v. Univ. Miss. Med. Ctr.*, 719 F. App'x 381, 385 (5th Cir. 2018) (citing *Lee v. Kan. City. S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). Specifically,

> A comparator will be considered "similarly situated" to the plaintiff if the two "held the same job responsibilities"; worked for "the same supervisor or had their employment status determined by the same person"; had "essentially comparable violation histories"; and "critically, [where] the plaintiff's conduct that drew the adverse employment decision [was] nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions."

*Id.* (citing *Lee*, 574 F.3d at 260).

The three individuals Browning identifies are not similarly situated. It is undisputed that they all worked for a different supervisor at a different location. Reply, 14 -15. Even more importantly, Adam Grace and Jessica Slater both had a perfect attendance record preceding their violations. *Id.* Browning did not. In addition, Slater and Chris Click also could show that they were not at fault for the violation: Slater actually was at the airport at the time of her shift, and Click was attending a union conference that his representatives failed to report. *Id.* In contrast, as noted above, it is undisputed that Southwest had no reason to think Browning was on leave and thus excused from Rule 17.

Accordingly, even if Browning could show there was a genuine dispute regarding his qualifications, he cannot present evidence of pretext. The Court therefore grants summary judgment to Southwest on Browning's TLC claims.

## CONCLUSION

For the reasons stated above, the Court grants Southwest's motion for summary judgment.

Signed April 23, 2019.

David C. Godbey
United States District Judge